AO 91 (Rev. 08/09)  Criminal Complaint

# UNITED STATES DISTRICT COURT
for the
Western District of Texas

SEALED

FILED
MAR - 5 2015
CLERK, U.S. DISTRICT CLERK
WESTERN DISTRICT OF TEXAS
BY_____ DEPUTY

| | |
|---|---|
| United States of America<br>v.<br>ARMANDO JESUS HERNANDEZ LEAL<br><br>_____<br>*Defendant(s)* | )<br>)<br>) Case No. SA15-MJ-195<br>)<br>)<br>) |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of __11/04/2013 - 02/07/2014__ in the county of __Bexar__ in the __Western__ District of __Texas__, the defendant(s) violated:

| *Code Section* | *Offense Description* |
|---|---|
| 18 U.S.C. 1343 | Wire Fraud |

This criminal complaint is based on these facts:

See attached Affidavit

☒ Continued on the attached sheet.

_____
*Complainant's signature*

FBI S.A. Laura H. Sirles
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 3/5/15

_____
*Judge's signature*

City and state: San Antonio, Texas    JOHN W. PRIMOMO, U.S. Magistrate Judge
*Printed name and title*

20 years confinement, $250,000 Fine or both; 3 years supervised release; $100 mandatory special assessment

1. I, Laura H. Sirles, (hereinafter Affiant) being duly sworn, do hereby depose and state as follows:

2. Affiant has been employed as a Special Agent (SA) with the Federal Bureau of Investigation (FBI) for six years and has participated in numerous investigations of violations of criminal law, including matters involving fraud and white collar crime.

3. The following is derived from personal observations, as well as the review of reports of, and discussions with other officers, agents, and individuals who have personal knowledge of the matters covered in those reports and discussions, from other information Affiant has received through the review of financial records and related documents, and from conversations with persons, further identified below, who have personal knowledge of the events described herein.

4. This affidavit is made and submitted in support of a criminal complaint charging Armando Hernandez, also known as Armando Jesus Hernandez Leal, with violating Title 18 U.S.C. Sections 1343 (Wire Fraud).

**Background**

5. In 1996, Mario Saldivar (hereinafter Mario), a Mexican businessman, met Armando Hernandez (hereinafter Armando) while both were attending the IPADE Business School in Monterrey, Mexico. Armando held high level, respected positions in Mexican banks during the time Mario was getting to know Armando. Mario and Armando shared the same Catholic principles and business background, which resulted in a close friendship.

6. In 2004, Armando moved to San Antonio, Texas after losing his job in Mexico and began working in investments. In May or June 2005, Armando took Mario to Northeast Securities in San Antonio, Texas, where Armando worked as a salesman, and Mario invested $195,000.00 with Bear Stearns.

7. In 2006, Armando presented Mario with another investment opportunity through the company, Investment Firm A, located in San Antonio, Texas. Armando told Mario that an individual, whom Mario knew from Catholic Retreats both had attended, worked at Investment Firm A. Armando told Mario that another investment firm, Investment Firm B, based in San Antonio, Texas, which Armando had 15% ownership, would service Mario's account with Investment Firm A. The trust Mario had in Armando was instrumental in Mario's decision to invest with Investment Firm A through Investment Firm B. In 2006, Mario invested $500,000.

8. Mario made subsequent investments with Investment Firm A through Armando. In addition, Mario's two brothers, Jorge Saldivar (herinafter Jorge) and Fernando Saldivar (Fernando), also businessmen, decided to invest with Armando. Mario's mother Myrthala Saldivar (herinafter Myrthala) and Mario's brother-in-law, Jorge Calderon, also invested with Armando. Between 2005 and 2014, Mario and his family invested approximately $66 million

with Armando. During this time, Armando emailed monthly account statements to Mario. The account statements were provided to Mario in English language format. Mario's primary language is Spanish and he has limited understanding of English.

9. In September 2014, Fernando called Mario and reported that Armando was committing fraud against their family. Fernando had requested $15 million of his investment from Armando in order to pay suppliers, but Armando had not returned the funds. Mario contacted Armando and asked about the $15 million Fernando needed. Armando initially explained Fernando's investment account was frozen and he would have to travel to New York City to get the funds released. Fernando and Mario caught Armando in a lie when Armando was unable to prove he traveled to New York City.

10. Armando subsequently admitted he was responsible for the loss of the Saldivar family funds. Armando asked Mario for forgiveness and requested he take care of Armando's wife and children. Mario told Armando he was forgiven, but requested a settlement be handled through their attorneys. On September 12, 2014, Armando sent a formal confession from his armandoj.hernandez@gmail.com email account to members of the Saldivar family and his wife, which read as follows [Email has been translated from Spanish to English]:

"Dear family,

I would like to offer you an apology and admit to the following:

1. I asked you to send money through accounts in Mexico and the United States to have it invested in your accounts.
2. The money was not invested in any way.
3. The investments shown on the statements sent to your email addresses do not exist, nor are they under the company shown in the statement.
4. I prepared the statements and they are completely false.
5. I used the money for my personal benefit.
6. I 'm willfully preparing this statement to avoid publicity and your filing a criminal complaint. I promise I will give you back your money in cash, assets, and properties. This transfer will start on <u>Monday, September 15</u>, 2014.
7. First thing on Monday, I will talk to Atty. Briseno to initiate the transfers and process.

Sincerely,

Armando J. Hernandez"

11. On or about September 16, 2014, the Saldivar family subsequently signed a "Debt Acknowledgement and Restitution Agreement" whereby Armando acknowledged his debt to the

Saldivar family and agreed to make restitution in the form of cash, securities, real property, and personal property. Thereafter, Armando transferred assets, including real property, to the Saldivars. On or about October 29, 2014, Armando and his wife filed a civil suit in the 150th Judicial District Court, Bexar County, Texas, against the Saldivars, alleging he signed the written contract under duress. On or about February 27, 2015, the civil court issued an Order Granting Application for Temporary Injunction, finding that "any and all assets Armando Hernandez and Nancy Hernandez currently have or own probably were acquired with or through funds stolen from the Saldivars and that Armando Hernandez and Nancy Hernandez have failed to offer any evidence otherwise or to account for the funds stolen from the Saldivars and show that assets Armando Hernandez and Nancy Hernandez have were not acquired with stolen funds from the Saldivars." The civil suit is ongoing.

## Wire Fraud

12. On or about November 4, 2013, Mario received an email from Armando's gmail account containing an attached Account Statement for Mario's company, Asser Global, Inc., for the month of October 2013. The Account Statement had an Investment Firm A letterhead and listed Investment Firm B as the office servicing the account and Investment C as the clearance agent. The Account Statement provided a listing of the asset allocation, portfolio holdings, and transactions for Mario's investment. Mario's margin debt was listed as $65 million on the first page of the statement. The margin debt had a 6% interest rate. Armando led Mario to believe he owed monthly interest payments on this margin debt that had been extended to him by Investment Firm C.

13. On or about November 13, 2013, Mario sent a wire transfer from his bank account in Mexico in the amount of $50,000 to a Frost Bank account owned by Capital in Movement, LLC. Capital in Movement is a company that is controlled by Armando. On or about November 14, 2013, Mario sent a wire transfer from his bank account in Mexico in the amount of $50,000 to the Capital in Movement, LLC account. These wire transfers represented a portion of the monthly interest payments on the margin debt Mario believed had been extended to him by Investment Firm C. Mario believed Capital in Movement, LLC was collecting these payments as an Advisor of the investment firm that he had 15% ownership. Mario expected these interest payments to be made to Investment Firm C.

14. On or about December 5, 2013, Mario received an email from Armando's gmail account containing an attached Account Statement for Mario's company, Asser Global, Inc., for the month of November 2013. The margin debt was listed as $65 million on the first page of the statement and Mario believed he owed a monthly interest payment on this margin debt.

15. On or about December 9, 2013, Mario sent a wire transfer from the bank account in Mexico belonging to his company, KEP Consulting, in the amount of $10,000 to the Capital in Movement, LLC bank account. On or about December 16, 2013, Mario sent a wire transfer from

the bank account in Mexico belonging to his company, Consoricio Prolabora SA DE CV, in the amount of $100,000 to the Capital in Movement, LLC account. On or about December 27, 2013, Mario sent a wire transfer from the bank account belonging to his company, Soluciones Simec SA DE CV, in the amount of $100,000 to the Capital in Movement account. Mario believed these were interest payments that would be paid to Investment Firm C.

16. On or about January 6, 2014, Mario received an email from Armando's gmail account containing an attached Account Statement for Mario's company, Asser Global, Inc., for the month of December 2013. The margin debt was listed as $65 million on the first page of the statement and Mario believed he owed a monthly interest payment on this margin debt. Mario also saw on the statement that a note for $14 million had matured and the money was reinvested.

17. On or about January 16, 2014, Mario sent a wire transfer from the bank account in Mexico belonging to his company, Consoricio Prolaboro SA DE CV, in the amount of $70,000 to the Capital in Movement, LLC account. On or about January 27, 2014, Mario sent a wire transfer from the bank account in Mexico belonging to his company, Consoricio Prolaboro SA DE CV, in the amount of $25,000 to the Capital in Movement, LLC account. On or about January 29, 2014, Mario sent a wire transfer from the bank account in Mexico belonging to his company, Consoricio Prolabora SA DE CV, in the amount of $15,000 to the Capital in Movement, LLC account. Mario believed these were interest payments that would be paid to Investment Firm C.

18. On or about February 7, 2014, Mario received an email from Armando's gmail account containing an attached Account Statement for Mario's company, Asser Global, Inc., for the month of January 2014. The margin debt was listed as $65 million on the first page of the statement and Mario believed he owed a monthly interest payment on this margin debt.

19. On or about February 6, 2014, Mario sent a wire transfer from the bank account in Mexico belonging to his company, Consoricio Prolaboro SA DE CV, in the amount of $29,000 to the Capital in Movement, LLC account. On or about February 7, 2014, Mario sent a wire transfer from a Plains Capital Bank account belonging to Mario's company, GoNet Columbia SA DE CV, in the amount of $130,000 to the Capital in Movement, LLC account. On or about February 24, 2014, Mario sent a wire transfer from a Plains Capital Bank account belonging to Mario's company, GoNet SA DE CV, in the amount of $14,000 to the Capital in Movement, LLC account. On or about February 24, 2014, Mario sent a wire transfer from the bank account in Mexico belonging to his company, Consoricio Prolaboro SA DE CV, in the amount of $37,000 to the Capital in Movement, LLC account. Mario believed these were interest payments that would be paid to Investment Firm C.

20. On February 27, 2015, Affiant interviewed the Chief Compliance Officer (CCO) for INVESTMENT FIRM A. The CCO was shown four account statements with an Investment Firm A letterhead provided by Armando to Mario for the months November 2013, December

2013, January 2014, and February 2014. The CCO examined the account statements and advised they were false statements. The CCO advised Investment Firm A does not handle client funds, nor do they issue account statements to clients. Account statements are provided to clients from Investment Firm C. The CCO noted several inconsistencies with the account statement, including an incorrect address for Investment Firm A, the representative's home address appeared where the client address belonged, and several paragraphs on the last pages of the account statement were repeated. The CCO pointed out that the margin debt, listed as $65 million, was a massive amount of margin debt for one client. In comparison, Investment Firm A may have approximately $6 million margin debt for all of their clients. The CCO also advised that Investment Firm A has never been associated with Investment Firm B.

## CONCLUSION

25. Affiant believes the above described facts and circumstances establish probable cause to believe that Armando Jesus Hernandez Leal, also known as Armando Hernandez, violation Title 18 U.S.C. 1343 (Wire Fraud).

26. Affiant respectfully requests that this affidavit and the accompanying application be placed under seal. This is necessary to protect the integrity of the ongoing investigation. Premature disclosure of the contents of this affidavit would frustrate the investigation by immediately alerting the subjects of the investigation to the nature of the probe, the techniques employed, the evidence developed to date, and the identities of those providing information.

Respectfully submitted,

_____
Laura H. Sirles, Special Agent
Federal Bureau of Investigation

Subscribed and sworn to before me by said Affiant on this the 5th day of March 2015.

_____
UNITED STATES MAGISTRATE JUDGE